# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| HOWARD DUNCAN, ) | |
| ) | CASE NO.   1:07-cv-2634 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|     Commissioner of Social Security  ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff, Howard Duncan ("Duncan"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Duncan's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382(c).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this court VACATES the decision of the Commissioner and REMANDS the case for further proceedings.

## I.  Procedural History

Duncan filed an application for SSI on May 20, 2003 alleging disability beginning March 1, 2003.  His application was denied initially and upon reconsideration.  Duncan timely requested an administrative hearing.

Administrative Law Judge James M. Mitchell ("ALJ") held a hearing on October 12, 2005.  Duncan, who was represented by counsel at the hearing, testified on his own behalf.  Nancy Borgeson testified as a vocational expert ("VE").  The ALJ issued a decision on July 27, 2006, in which he determined that Duncan is not disabled.  When the Appeals Counsel declined further review on July 10, 2007, the ALJ's decision became the final decision of the Commissioner.

Duncan filed an appeal to this court on August 30, 2007.  Duncan alleges that the ALJ's decision denying him benefits is not supported by substantial evidence because (1) the AL erred regarding Duncan's age and education; (2) the ALJ erred in relying on the VE's testimony that Duncan could perform other jobs; and (3) the ALJ failed to give appropriate weight to the opinion of Duncan's treating physician.

## II.  Evidence

*A.   Personal and Vocational Evidence*

Duncan was born on March 11, 1960 and was 45 years old at the time of the administrative hearing.  He has completed the 9th grade and has not received a GED.  He also has training in electrical wiring; plumbing; and heating, ventilating, and air conditioning.

*B.   Medical Evidence*

On March 18, 2003, Emmanuel I. Elueze, M.D., found that Duncan had a blood sugar level of 862 and diagnosed him as suffering from diabetes.  Transcript ("Tr."), pp. 206-07.  Duncan was admitted to St. Vincent Charity Hospital, treated with insulin, and discharged after receiving an insulin kit and education regarding its use.

At the request of Duncan's treating physician, Carl A. Robson, M.D., Duncan underwent a nerve conduction study and needle electromyography on June 12, 2003. Tr.

2

at 245-47. Duncan had been complaining of pain in both hands, particularly the right hand, and pain radiating up to his right shoulder. The study revealed bilateral chronic C7 radiculopathy, left C8-T1 radiculopathy, and mild carpal tunnel syndrome in the right wrist. The results also suggested carpal tunnel syndrome in the left wrist.

An MRI scan of the cervical spine on June 27, 2003 revealed mild or moderate disc bulging and no or mild stenosis at C2-3, C3-4, C4-5, and C6-7. Tr. at 203. There was moderate to severe disc bulging and moderate stenosis at C5-6. An MRI of the thoracic spine on the same day revealed mild degenerative changes with marginal spurs with slight anterior wedging at T6. Tr. at 204. Based on these findings and his own examination, Dr. Robson opined that Duncan could not perform construction work.

Wilfredo M. Paras, M.D., examined Duncan at the request of the Bureau of Disability Determination ("the Bureau") on July 28, 2003. Tr. at 174-80. Dr. Paras diagnosed Duncan as suffering from diabetes mellitus with peripheral neuropathy resulting in numbness and tingling in the feet; injury to upper and lower extremities, including pain in the right shoulder and right wrist and limited motion in the right wrist; bilateral carpal tunnel syndrome, particularly in the right wrist; and arthritis of the neck. Dr. Paras also opined that "this claimant's ability to perform work-related activities is limited mainly due to his right shoulder, right hand and right wrist pain. He also has episodes of low back pain. He also continues to have pain in his neck." Tr. at 176.

On December 29, 2003 Duncan underwent carpal tunnel release surgery in his right wrist. Tr. at 493-94. Duncan continued to have pain in his right hand and arm after the surgery, and he also reported lower back pain radiating down his right leg and neck pain radiating to both shoulders. Tr. at 424. He underwent additional surgery on his right hand

3

on April 6, 2004. Tr. at 423.

A medical progress note on October 22, 2004 indicates that Duncan admitted doing residential plumbing in January 2004. Tr. at 654.

Anantha Reddy, M.D., examined Duncan for his back and leg pain on February 27, 2004. Tr. at 465-66. The pain was the result of Duncan's having been hit by a car more than 20 years earlier and had been generally intermittent but became chronic when exacerbated. X-rays of the lumbar spine revealed mild narrowing at L4-5, slight straightening of the curve of the spine, anterior osteophytes at L2 and L3, and narrowing of the joint facets at L4-5 and L5-S1. Tr. at 467. Duncan underwent physical therapy for his back pain but obtained only temporary relief. Tr. at 393, 398-401.

On March 23, 2004, Paul S. Morton, M.D., reviewed Duncan's record and completed an RFC assessment of Duncan. Tr. at 210-17. Dr. Morton found that Duncan could lift 20 pounds occasionally and 10 pounds frequently, could stand or walk for six hours in an eight-hour workday, could sit for six hours in an eight-hour workday, was unlimited in his ability to push or pull, and could only occasionally balance. He also opined that Duncan was limited in his ability to reach in all directions and in his gross and fine manipulation. Dr. Morton found no other functional limitations.

On April 4, 2004 Dr. Robson completed a Physical Capacity assessment of Duncan at the request of the Bureau. Tr. at 222-23. Dr. Robson opined that Duncan could lift up to five pounds occasionally; could not lift any weight frequently, could stand or walk for four hours in an eight-hour workday; could stand or walk for one hour continuously; could sit for four to six hours in an eight-hour workday; could sit for one hour without interruption; could never climb, balance, stoop, crouch, kneel, or crawl; could rarely reach and push or pull;

4

could occasionally handle and engage in fine or gross manipulation; and should avoid height, moving machinery, and temperature extremes. When asked if Duncan needed extra rest periods to perform work, Dr. Robson wrote in the margin, "Cannot work." Tr. at 223.

Duncan underwent surgery for his right thumb and little finger on April 6, 2004. Tr. at 423. By May 5, 2004, Duncan's hand was doing extremely well. Tr. at 404.

On May 7, 2004, Duncan reported walking five miles with pain and medication. Tr. at 396.

On June 28, 204, Duncan reported that his back pain was improving. Tr. at 360. He reported that the pain was four on a ten-point scale.

Maria Siemionow, M.D., examined Duncan on August 26, 2004. Tr. at 255. Duncan exhibited bilateral weakness of his toe extensors and in inability to spread his toes. He had also been suffering from increasing burning pain in his feet for several year, pain that was now manifesting itself in his fingertips. Tr. at 569-70. The doctor found a positive Tinel sign for Duncan's peroneal, deep peroneal, and superficial peroneal nerves and a lack of two-point discrimination for the posterior tibial nerve. She opined that these results indicated severe nerve damage and axonal loss. She diagnosed Duncan as suffering from polyneuropathy with superimposed compressive neuropathy resulting from his diabetes. Duncan agreed to surgery. Dr. Siemionow operated on Duncan's right foot October 25, 2004 and on his left foot on April 6, 2005. Tr. at 651-53, 777-78. Duncan then participated in physical therapy designed to allow him to ambulate with a cane. Tr. at 304-05. He found significant improvement after his surgeries. Tr. at 734, 821.

On February 4, 2005, Dr. Reddy assessed Duncan as functional at the sedentary

5

level with no additional limitations in his mobility or ability to perform activities of daily living. Tr. at 694-95.

Duncan had experienced pain in his left shoulder for about ten years. The pain grew more intense with time. On May 18, 2005 Duncan was diagnosed with a torn rotator cuff. Tr. at 733. A physician at the Cleveland Clinic recommended surgery to deal with the problem. Tr. at 904. Such surgery had not taken place by the time of Duncan's hearing.

Duncan has a history of alcohol abuse, and his reported alcohol consumption varies over time. As of June 15, 2005, he reported drinking daily. Tr. at 904. Duncan also admits past use of marijuana and cocaine.

*C.    Hearing testimony*

At the hearing, Duncan testified that he was 45 years old and born on March 11, 1960. Tr. at 32. He also testified that he had gone as far as completing the ninth grade at school and had not obtained a GED. He explained that although he had not received any additional education, he had received vocational or on-the-job training in electrical residential wiring, plumbing, and heated ventilation and air conditioning.

Duncan told the court that when he quit working he had pain in his hands and feet, lower back, legs, and left shoulder. Tr. at 33. He estimated the pain as ranging from ten out of ten in the morning then falling to about four out of ten after taking his medications. Tr. at 55-56. He testified that he cooked two or three meals a day, washed dishes once a day, did laundry once a week, and changed bedding once a week but did not mop floors, sweep, vacuum, or dust. Tr at 40-41. He dressed and bathed himself. Tr. at 57. Duncan also reported that he used a computer about one hour a week, watched television for three hours a day, read about 12 to 14 hours a day, went to church once a month, and visited

6

with relatives or friends about three times a month. Tr. at 41-42. He denied doing any work outside or doing any driving. Tr. at 43-44.

Duncan admitted smoking about one pack of cigarettes a day and drinking two cans of beer a week, but he denied drinking any other form of alcohol. Tr. at 44-45. He also stated that he had an alcohol problem about 15 years ago. Tr. at 49. Duncan told the court that he had spent 18 months in Cuyahoga County jail for trafficking marijuana. Tr. at 50.

Duncan estimated that he was able to stand for ten minutes, sit for four hours, walk one block, and put on his socks. Tr. at 50-51. He also was able to climb 18 or 19 steps to reach his apartment. Tr. at 51. According to Duncan's testimony, he had difficulty reaching to his left, raising his arms above his head, and maintaining his grip. Tr. at 51-52. He denied doing any exercise other than physical therapy . 56-57.

The ALJ gave the VE a series of hypothetical questions. Tr. at 61-66. First, he asked the VE to assume an individual with a residual functional capacity ("RFC") for light work, 45 years of age, limited in education, with Duncan's training and work history. He further asked the VE to assume that such an individual could lift, push, or pull 20 pounds occasionally or ten pounds frequently; could walk and stand frequently; and sit, stoop, or bend occasionally. Then he asked the VE if such a person could perform Duncan's past relevant work. The VE testified that such a person could not do so. The ALJ then asked if such a person could do any other semi-skilled or unskilled work. The VE testified that the hypothetical individual could perform a number of unskilled jobs, including assembler of small parts, a visual inspector, or a cashier.

The ALJ then began adding additional limitations to his hypothetical. He asked the

7

VE to assume slight limitations in overhead and side reach;[1] slight limitation in the ability to perform a simple and routine task; requiring occasional medication for dust, fumes, and asthma; and slight limitation in fine and gross manipulation with the non-dominant hand. The VE testified that there would be no erosion in the jobs that could be performed with these additional limitations. The ALJ then added moderate limitation in overhead and side reach with the non-dominant arm, and the VE again testified that there would be no erosion in the jobs that this individual could perform. The ALJ added moderate to severe pain and a sit/stand option. The VE opined that there would be a 20% erosion in the jobs that this individual could perform. When the ALJ imposed a moderately limited ability to perform simple and routine tasks, there was an additional 50% erosion in the jobs that the individual could perform.

The ALJ then changed the hypothetical. He asked the VE to assume an individual with an RFC for sedentary work, 45 years of age, limited in education, with Duncan's training and work history. He further asked the VE to assume that such an individual could lift, push, or pull 10 pounds occasionally or five pounds frequently; could walk, stand, stoop, or bend occasionally and sit frequently. He asked the VE if such a person could perform Duncan's past relevant work, and the VE said he could not. The ALJ then asked if such a person could do any other work. The VE testified that the individual could perform some unskilled assembly and inspection jobs and unskilled office work. The ALJ added slightly diminished but correctable vision, slight limitation in overhead and side reach with non-dominant side; slight limitation in ability to perform simple and routine tasks; requiring

---

[1] The ALJ defined "slight limitation" as up to six hours per shift.

medication three times a day for asthma, dust, and fumes; requiring slight supervision; and slight to moderate pain. The VE opined that there would be no erosion in the number of jobs that could be performed with these additional limitations.

The ALJ then added a moderate limitation for overhead and side reaching with the non-dominant side; a slight limitation in fine and gross manipulation with non-dominant hand; and required medication for asthma, dust, and fumes four times a day or more. The VE testified that the additional limitations would result in a 20% erosion in the number of jobs that the individual could perform. When ALJ added moderate to severe pain, a sit/stand option at the worker's option, and a slight limitation in the ability to perform simple and routine tasks, the VE opined that there would be an additional 20% erosion in the number of jobs that the individual could perform. When the ALJ added a moderate limitation in the ability to perform simple and routine tasks, the VE testified that the total erosion in the jobs that could be performed would be 75%. When Duncan's attorney added moderate limitation in fine and gross manipulation, the VE testified that the individual would not be able to perform 90% of the jobs last described.

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and

resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

In relevant part, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 1, 2003.

2. The medical evidence establishes that the claimant has insulin dependent diabetes mellitus, severe diabetic neuropathy, hypertension (controlled), lumbar canal stenosis and back pain, left shoulder rotator cuff tear and AC degenerative changes, cervical degenerative disc disease, mild bilateral carpal tunnel syndrome, obesity, asthma, substance abuse, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

3. Claimant's allegations are not credible for the reasons set forth in the body of this decision.

4. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except from reaching overhead[,] is slightly limited on the left and gross manipulation is slightly limited on the left, ability to do simple, routine, repetitive tasks is slightly limited.  Claimant must frequently avoid dust and fumes due to asthma and he requires occasional supervision.  He has slight to moderate pain (20 CFR 416.945).

5. The claimant is unable to perform his past relevant work as set forth in the body of this decision.

6. The claimant's residual functional capacity for the full range of sedentary work is reduced by the limitations in finding number 4.

7. The claimant is 35 years old, which is defined as a younger individual (20 CFR 416.963).

8. The claimant has the equivalent of a high school education (20 CFR 416.964).

9. The claimant has no transferable skills.

10. Based on exertional capacity for sedentary work, and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled".

11. The above rule used as a framework for decisionmaking directs a finding of not disabled since there remain a significant number of jobs which the claimant can still perform, as the vocational expert testified as discussed above.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

Tr. at 26-27.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the

11

correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Duncan v. Perales*, 402 U.S. 389 (1971).

## VI.  Analysis

Duncan claims that the ALJ opinion is not supported by substantial evidence because (1) the AL erred regarding Duncan's age and education; (2) the ALJ erred in relying on the VE's testimony that Duncan could perform other jobs; and (3) the ALJ failed to give appropriate weight to the opinion of Duncan's treating physician.  Although the Commissioner concedes that the ALJ erred, he argues that the errors were harmless.

The ALJ found that Duncan was 35 years old and had the equivalent of a high school education.  The record is clear that at the time of the hearing Duncan was 45 years old and that highest grade he completed was the 9th grade.  He does not have a GED.

The ALJ mistakenly applied Rule 201.28 at Pt. 404, Subpart P, Appendix 2 ("the grid") in finding that Duncan was not disabled.  Duncan concedes that even if the ALJ had applied the correct rule, Rule 201.18 or Rule 201.19 at the grid, the mandated finding would be "not disabled."  Duncan argues, however, that if the ALJ had properly assessed his RFC and given that RFC to the VE in a hypothetical question, the ALJ would have found that

12

Duncan was disabled.

Duncan argues that the ALJ made two errors in the RFC he gave to the VE. First, although the ALJ found that Duncan must frequently avoid dust and fumes due to asthma, the hypothetical question to the VE merely asked the VE to assume that Duncan required medication for asthma, dust, and fumes. Second, Duncan argues that the ALJ erred by not giving substantial weight to the opinion of Duncan's treating physician regarding his RFC and not giving any explanation for ignoring that opinion.

The medical opinions of treating physicians should be given greater weight than those of physicians hired by the Commissioner:

> An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." [20 C.F.R. § 404.1527(d)(2).] If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. *Id.*
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart,* 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004). Medical opinions include "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Duncan's treating physician, Dr. Robson, opined that Duncan could lift up to five pounds occasionally; could not lift any weight frequently; could sit for four to six hours in an eight-hour workday; could sit for one hour without interruption; could never stoop; could rarely reach and push or pull; could occasionally handle and engage in fine or gross manipulation; and should avoid height, moving machinery, and temperature extremes. Tr. at 222-23. The ALJ found that Duncan could perform sedentary work with additional limitations, was slightly limited in his ability to reach overhead, was slightly limited in his fine and gross manipulation on the left side, and must frequently avoid dust and fumes. The ALJ's findings regarding Duncan's RFC were inconsistent with the medical opinion of Dr. Robson in that a capacity for sedentary work requires lifting ten pounds occasionally and the ability to sit for six to eight hours a day. The ALJ's findings were also inconsistent with Dr. Robson's opinion in that it ignored the doctor's assertion that Duncan could not stoop; could not reach, push, or pull; could only occasionally handle or manipulate; and should avoid heights, moving machinery, and temperature extremes.

The ALJ failed to explain adequately why he did not give the opinion of the treating physician controlling weight. His opinion states:

> [A]t least one of [Duncan's] doctors opined that claimant has a residual functional capacity for sedentary work. This is generally consistent with Dr. Robson's opinion. As to these manipulations in grip/manipulation etc. the undersigned notes that this

> is inconsistent with the CCF records showing mild bilateral carpal tunnel syndrome thereafter. Claimant is able to dress self, write checks, do laundry once a week, shop twice weekly, and otherwise use his hands for day to day activities.

Tr. at 25. As noted above, the ALJ's contention that a residual functional capacity for sedentary work is "generally consistent" with Dr. Robson's opinion is erroneous. Further, while the ALJ looked at the effect that Duncan's carpal tunnel syndrome might have on his ability to manipulate objects, he failed to consider the impact that Duncan's severe diabetic neuropathy might have on manipulation, stooping, and avoiding heights and moving machinery.[2] Furthermore, the ALJ's conclusion that Duncan cannot have substantial problems with manipulation because he can in some fashion manage to perform most activities of daily living is a *non sequitur*. Duncan's daily activities included cooking, washing dishes, laundry, dressing and bathing himself, using a computer about one hour per week, and watching television. These activities do not in themselves demonstrate the extent to which an individual can engage in five or gross manipulation.

The decision of the Commissioner must be reversed. The failure to explain why Dr. Robson's opinion was not given controlling weight is itself a procedural error that generally warrants reversal:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir. 1996). To hold otherwise, and to recognize substantial evidence as a

---

[2] Indeed, although finding that Duncan suffered from severe diabetic neuropathy, this finding does not appear to have been a factor in the ALJ's determination regarding any of Duncan's limitations.

15

>   defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory.  The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action . . . found to be . . . without observance of procedure required by law."  Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

*Wilson*, 378 F.3d at 546 (reversing the decision of the Commissioner for failure to explain why the ALJ did not give the opinion of a treating physician controlling weight).  Moreover, even if this procedural error were insufficient to warrant reversal, the decision of the Commissioner must be reversed because the failure to give controlling weight to Dr. Robson's opinion was not harmless error.  The Commissioner has determined that an inability to lift ten pounds, an inability to stoop, and manipulative limitations each significantly erodes the sedentary occupational base.  Social Security Ruling 96-6p.  Thus, the court cannot say that the failure to give Dr. Robson's opinion controlling weight absent an explanation for not deferring to his opinion was harmless error.  Finally, the decision of the Commissioner must be reversed because the ALJ failed to include in the hypothetical given to the VE one of functional limitations found by the ALJ.  The ALJ asked the VE to consider the employability of an individual requiring medication three times a day for asthma, dust, and fumes.  But the ALJ found that Duncan must frequently avoid dust and fumes due to asthma.  Requiring medication to tolerate a condition is not the same thing as a requirement to avoid that condition.  The extent to which a requirement to avoid dust and fumes would erode the sedentary occupational base is unknown.  The court cannot say, therefore, that the failure to include this limitation in the hypothetical question to the VE was harmless error.

   The ALJ failed to give the opinion of Duncan's treating physician substantial weight,

failed to explain adequately why he did not give the treating physician's opinion substantial weight, and failed to include significant limitations in his hypothetical question to the VE. It cannot be said under these circumstances that the Commissioner's decision is supported by substantial evidence.

## VII. Decision

For the foregoing reasons, the Court VACATES the decision of the Commissioner and REMANDS the case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: June 5, 2008